UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUSTMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL BYCE, <br><br> Defendant. | Case No. 1:05-cv-00333-MHW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On August 29, 2007, following a bench trial, the Court entered an Order against Michael Byce ("Byce") in favor of JustMed, Inc. ("JustMed") finding that the weight of the evidence supported a finding that Byce was liable on JustMed's claims of misappropriation of a trade secret (Count I), conversion (Count II), and breach of fiduciary duty (Count III), and found punitive damages were warranted. *Mem. Dec. and Order ("Mem. Dec.")*, Dkt. 86. The Court dismissed JustMed's claim of tortious interference with a prospective economic advantage (Count IV) on the grounds that JustMed had not demonstrated a valid economic expectancy. *Id*. The Court also found in

favor of JustMed on Byce's counterclaim for declaratory relief under the Federal Copyright Act dismissing it with prejudice. *Id.*

On September 6, 2007, the Court entered Judgment against Byce for money damages in the amount of $41,250, left open the amount of punitive damages pending post-trial motions, and entered a permanent injunction against Byce that will be described below. *Judgment*, Dkt. 87. On January 11, 2008, the Court entered an Amended Judgment and Permanent Injunction. *Amended Judgment*, Dkt. 118. The Amended Judgment provided for money damages of $41, 250, punitive damages of $5,000, and costs of $2,283.14 for a total judgment of $48,533.14. Byce appealed. However, he did not appeal the Court's findings that he was liable for conversion and for breach of fiduciary duty or the imposition of punitive damages.

On April 5, 2010, the Ninth Circuit reversed the Court's determination that Byce misappropriated a trade secret and remanded the case for this Court to "determine whether and in what amount JustMed can recover damages on the conversion or breach of fiduciary duty claims and whether an injunction to prevent future misappropriation is warranted." *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1131 (9th Cir. 2010). It remanded the damages issue because the Court had tied its damages finding to the trade secrets count and had not conducted a damages analysis under the conversion and breach of fiduciary duty counts.

On October 5, 2012, following failed settlement negotiations, the Court granted Byce's Motion to Vacate Judgments (Dkt. 130) pending briefing by the parties on the

MEMORANDUM DECISION AND ORDER - 2

issues to be resolved on remand. *Order*, Dkt. 144. Later the same day, JustMed filed a Notice of Bankruptcy Petition by Byce. Dkt. 145. Accordingly, in light of the Bankruptcy Code's automatic stay, 11 U.S.C. § 362, the Court withdrew its October 5, 2012 Order vacating the judgments, effectively reinstating the Amended Judgment entered on January 11, 2008.

On May 15, 2012, the United States Bankruptcy Court for the District of Idaho entered an Amended Order Suspending Proceedings in a pending adversary proceeding in Byce's bankruptcy case. *See In Re Michael Leonard Byce, et al., Debtors*, Dkt. 43, United States Bankruptcy Court for the District of Idaho, Case No. 10-02978-TLM, Adv. No. 10-06097-TLM attached to JustMed's Motion for Status Conference. Dkt. 147. The adversary proceeding was suspended to allow the Court to conclude the current litigation on remand. The Court invited simultaneous briefing on the remand issues, held a hearing on October 1, 2012, and is now prepared to enter its decision.

## FACTUAL BACKGROUND

This action arises out of a dispute regarding the software used in a digital audio larynx device called "JusTalk" which was being developed by Joel Just ("Just") and Byce over a period of years starting in 1994. They formed a corporation to market the product. Just and his wife owned a majority of the shares of the corporation, and Byce and others owned a minority interest. Jerome Liebler ("Liebler") began working on the device in 2003 as an employee of JustMed. Just and Liebler developed a hardware prototype, wrote assembly language source code, and eventually developed JusTalk. They

MEMORANDUM DECISION AND ORDER - 3

demonstrated the product at an International Association of Laryngectomees conference in Anaheim, California, in the summer of 2004, where at least one speech pathologist was impressed with the device.

In September of 2004, Byce replaced Liebler on the source code project working on it full time. Eventually, when it appeared that the JusTalk device might be marketable, issues arose as to the ownership of the software. In the spring of 2005, JustMed began advertising the device to the laryngectomee community claiming that a new version of the software was imminent. JustMed then became involved in discussions with ATOS, a Swedish corporation that was considering a possible merger with or buy-out of JustMed. Byce became concerned that he would not be adequately compensated for his work. Therefore, on June 13, 2005, he removed the JusTalk software from JustMed's computer systems. Just was unaware Byce had done so until he was attempting to demonstrate the device for ATOS.

In response to a state court temporary restraining order ("TRO"), Byce turned over the source code to JustMed. However, he withheld some of his programmer's notes from the code. Therefore, Just engaged Liebler to help him re-develop the code for upcoming trade shows and presentations. It was not completed in time for this engagements. Negotiations with ATOS ended, and a distributor backed out of selling JustMed products. It took Just and Liebler three months to re-create the code. The amount of their salaries for those three months totaled $41,250 – the amount that formed the basis for the Court's award of damages.

**MEMORANDUM DECISION AND ORDER - 4**

Byce had also retained JusTalk units and other JustMed hardware which was not turned over to JustMed until the third day of trial.

## ANALYSIS

1. **Post-Trial Findings**

On the conversion issue, the Court found that Byce committed acts of conversion by deleting software owned by JustMed and retaining the hardware until the third day of trial notwithstanding the fact that he believed he was the true owner of the software or that he retained possession of the hardware for the purpose of preserving evidence. *Mem. Dec.* at 20-21. The Court also found that as a director of the corporation, Byce owed a fiduciary duty to JustMed which he breached by changing the copyright on the source code from JustMed to his name and by deleting the source code to use as leverage in negotiating for more shares in the company and to sabotage the potential sale to or merger with ATOS. *Mem. Dec.* at 21-23. the Court found that such action was neither in good faith nor in the best interests of JustMed, especially given the timing of the deletion. *Id*. The Ninth Circuit did not disturb those findings. Rather, it reversed and remanded for a determination of the appropriate damages.

In making its findings on the liability issues, the Court noted that Byce was "a less than credible witness." *Mem. Dec.* at 18. In making its findings on the punitive damages issue, the Court specifically held that Byce acted willfully and maliciously by (1) changing the copyright from JustMed's name to his and never discussing the change with anyone else in the company; (2) deleting the source code from JustMed computers in the

middle of the night only days before an important demonstration and meeting with a potential investor and not informing Just; (3) upon Just's detection of the deletion, claiming that he had deleted it for "revision control," something he had never done before; (4) and deleting the programmer's notes from the source code before turning it over to JustMed pursuant to the TRO. *Mem. Dec.* at 24. *See also Order* at 7-8, Dkt. 111. The Court reaffirms those prior findings.

2.     **Conversion**

The oft-cited Idaho Supreme Court case on the measure of damages in caversion cases, *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 979 P.2d 605 (1999), is relied on by both parties but interpreted differently.

In *Peasley*, the court stated that the "proper measure of damages for wrongful taking or detention of personalty is the reasonable value of its use during the detention period." *Id*., 132 Idaho at 742, 979 P.2d at 615 (citations omitted).  However, in cases where an owner retakes the subject property, in addition to the value of its use during the detention period, the owner may recover damages based on its value at the time of the conversion less its value when returned. *Id.* (citations omitted).

In arguing against damages on the conversion count, Byce focuses on the "value at the time of conversion" element.  He claims that because most of the Byce code was returned, JustMed's claim for damages is limited to the value of the Byce code at the time Byce deleted it less the value of the source code that JustMed created to replace it *or* the reasonable value of its use during the detention period. *Def.'s Br*. at 8.  He further argues

MEMORANDUM DECISION AND ORDER - 6

that JustMed's claim for damages should fail because JustMed did not offer any evidence that the Byce code had a value that could be quantified and because testimony at trial established that the source code was of no value to JustMed at the time of the conversion.

JustMed, on the other hand, notes *Peasley's* other statement regarding damages for conversion: "As a general rule, reasonable and necessary expenses incurred in recovering the property are a proper element of damages in a conversion action." *Peasley*, 132 Idaho at 743, 979 P.2d 616 (citing 89 C.J.S. *Trover and Conversion* § 174 (1955)). JustMed further notes that the Idaho Supreme Court has allowed in a conversion action actual damages, consequential damages in the form of economic losses, and punitive damages. *Pl.'s Br.* at 14 (citing *Luzar v. Western Surety Co.*, 107 Idaho 693, 692 P.2d 337 (Idaho 1984)). Finally, JustMed cites general principles of tort damages as including the cost of repair or replacement in the case of injury to personal property.

The Court need look no further than the conversion cases themselves to find that an owner of converted property can recover, depending on the facts of each case, the difference between the value of the property at the time it was converted and the time it was returned, the value of its use during the detention period, consequential damages, reasonable and necessary expenses incurred in recovering the property, and punitive damages.

*Peasley* and *Luzar* are consistent with long-held common law principles of conversion damages that owners are to be compensated for actual losses incurred as a result of a wrongful taking. 18 Am. Jur. 2d, *Conversion* § 116. Although the usual

**MEMORANDUM DECISION AND ORDER - 7**

measure of damages is based on the market value at the time of the conversion, there are other measures of damages recoverable depending on the circumstances of the case. *Id*. More specifically,

> [r]ules relating to the measure of damages for conversion are flexible and can be modified in the interest of fairness. Thus, damages for conversion may include other losses or expenses necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong.

*Id*.

That market value for software in development is difficult to establish should not preclude recovery of damages. In cases where the converted property has no "readily ascertainable fair market value, the measure of damages is the *actual value of the property to the owner* at the time of the loss. *Henson v. Reddin*, 358 S.W.3d 428, 436 (Tex. App. 2012). (citations omitted) (emphasis added). In such cases, the purchase price is probative of actual value and the measure of damages is the price less items such as wear and tear or depreciation. *Id.* Obviously, that alternative measure of damages is not workable in the case of software.

This can be stated another way: "Absence of a market value for personal property converted . . . will not restrict the owner thereof to nominal damages . . . but the courts will have recourse to some other rational method of ascertaining the value of the property from such elements as are attainable." W. E. Shipley, Annotation, *Measure of Damages for Conversion or Loss of, Damage to, Personal Property Having No Market Value*, 12

A.L.R. 2d 901 (1950), § 2 (citations omitted).  In keeping with the flexible approach to damages and the goal of allowing an owner more than nominal damages in a conversion action, "various elements" may be considered in determining actual value or value to the owner.  *See generally, id.*  One common alternative measure of damages is the cost of replacement, "since the object of the award of damages is to compensate the plaintiff.  Where the property is such that reproduction or replacement is possible, it has been said that reproduction cost is the measure of damages."  *Id*. at § 1(a).

Most analogous to the conversion of the software present in the instant case is the conversion and destruction of a manuscript of which the author had not made a copy.  There the Seventh Circuit held that "an author may prove *nonmarket* damages for the tortious destruction of a manuscript."  *See Taliferro v. Augle*, 757 F.2d 157, 161 (7th Cir. 1985) (citations omitted) (emphasis added).  The court noted that an example of nonmarket damages is "proof of the cost in time or materials of reconstructing [the manuscript]."  *Id*. at 162.  Indeed, several cases have held that the cost of replacement or reproduction can constitute the measure of damages for conversion and can be based either upon an actual cash outlay or the value of the labor and materials to replace the property.  *See generally*, 12 A.L.R2d 902 § 5(a) (citations omitted).

As stated above, Byce contends that Just had not proven that the source code had any value because he testified that the Byce code never worked and was essentially of no use to JustMed.  *Def.'s Br*. at 8.  He therefore argues that JustMed is not entitled to damages at all.  The Court finds that Byce reads both *Peasley* and Just's testimony too

narrowly and ignores the common law measure of damages in conversion cases.

The excerpts of Just's testimony must be considered in the context of the entire testimony and in the context of the lawsuit itself. The Byce code obviously had some value or JustMed would not have incurred the expense of suing to recover the code, and Byce would not have withheld it as leverage for increased compensation and to sabotage the potential sale of the company. Furthermore, Just did not testify that it did not work at all. It functioned on the JusTalk device, but never functioned reliably on a laryngectomee. Just thought the "tonal qualities" Byce was working on were positive. Prior to the conversion, there is no indication that Just was planning to do anything other than allow Byce to continue to perfect the Byce code during which time Just would market the product and attend trade shows. As stated above, establishing a market value is difficult. Therefore, JustMed is entitled to recover the actual value of the Byce code to the company. Again, that is difficult to quantify. Accordingly, the cost of rebuilding the source code is a logical way to determine damages.

*Peasley* does not preclude this measure of damages. It does indeed stand for the proposition that the measure of damages in conversion actions is the value of the property at the time of the conversion. However, it does not state that it is the exclusive measure of damages and does not reject any other measure of damages. Indeed, as stated above, the Idaho Supreme Court has allowed actual, consequential, and punitive damages even where the converted property had a clearly defined value. *See Luzar, supra* (addressing damages in the context of unlawfully retained certificates of deposit used as collateral).

**MEMORANDUM DECISION AND ORDER - 10**

As the trier of fact, the Court can draw reasonable inferences from the evidence. Had Byce not removed the software, all indications are that Just and Liebler would not have become involved again in the software development. Because Byce removed it, however, and then returned it without the program notes, it was reasonable for Just and Liebler to start over using the code with which they were familiar rather than trying to perfect one on which only Byce had worked. They established to the Court's satisfaction at trial that the cost to do so was $41,250. Byce did not challenge that amount on appeal. Accordingly, the Court finds that JustMed is entitled to damages on $41,250 on the conversion count.

### 3.   Breach of Fiduciary Duty

JustMed contends that the damages incurred as a result of the conversion are the same damages incurred as a result of the breach of fiduciary duty, including damages for the loss of personal property, lost rents, extra expenses, and payments for repair or replacement. *Pl.'s Br.* at 15. Byce contends that a director who breaches his fiduciary duty is entitled only to any profit received as a result of his breach that would have otherwise accrued to the corporation. *Def.'s Br.* at 10. He concludes that because the evidence established that the source code had no value and the Court had found that JustMed's claim of damages for economic loss or missed opportunity were too speculative, JustMed cannot recover damages for breach of fiduciary duty.

Byce relies on the *Steelman* case on the damages issue. In *Steelman*, the court stated, "The usual measure of damages in an action for breach of fiduciary duty by a

MEMORANDUM DECISION AND ORDER - 11

corporate director is the profit which the director received and which the corporation was deprived of by the transaction." *Steelman v. Mallory*, 110 Idaho 510, 514, 716 P.2d 1282, 1286 (Idaho 1986) (citations omitted).

Once again, Byce reads the case law too narrowly. Notably, the court in *Steelman* also stated, "By this opinion, we do not mean to imply that the foregoing is the only method of proving damages. . . ." *Id.* (limiting the ruling to the facts of the case). Byce did not receive any profit as a result of his breach. Therefore, damages must be measured in another way.

In Idaho, "[t]he measure of damages in an action for breach of fiduciary duty is the same as the measure of damages in an action for breach of trust." *Pickering v. El Jay Equipment Co, Inc.*, 108 Idaho 512, 517, 700 P.2d 134, 139 (Idaho App. 1985) (citing *Hudson v. American Founders Life Insurance Company of Denver*, 151 Colo. 54, 61, 377 P.2d 391, 395 (1963)). *See also* Bogert, *The Law of Trusts and Trustees* § 481.1 (Corporate Fiduciary Relationships). The *Hudson* case from Colorado relied on the Restatement (Second) of Trusts § 205 which stated that:

> If the trustee commits a breach of trust, he is chargeable with
>
> > (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or
> >
> > (b) any profit made by him through the breach of trust; or
> >
> > (c) any profit which would have accrued to the trust estate if there had been no breach of trust.

**MEMORANDUM DECISION AND ORDER - 12**

Restatement (Second) of Trusts § 205 (1959).

That section of the Restatement of Trusts has since been updated and revised as follows:

> A trustee who commits a breach of trust is chargeable with
>
> (a) the amount required to restore the values of the trust estate and trust distributions to what they would have been if the portion of the trust affected by the breach had been properly administered; or
>
> (b) the amount of any benefit to the trustee personally as a result of the breach.

Restatement (Third) of Trusts § 100 (2012).

**MEMORANDUM DECISION AND ORDER - 13**

According to the commentary to the Third Restatement of Trusts, the primary objectives of the rule regarding damages upon breach of trust are to make the trust and the beneficiaries whole and to insure that the trustee does not personally benefit from the breach. *Id.* cmt. a. Punitive damages may be awarded against the trustee if he "has acted maliciously, in bad faith, or in a fraudulent, particularly reckless, or self-serving manner." *Id.* cmt. d. Analogously, a corporation would be entitled to recover an amount that would make the corporation whole. It follows, then, that to make JustMed whole, Byce must "restore" the amount the corporation was required to expend to replace the source code – the amount it would not have had to expend had Byce not removed the source code.

JustMed cited *Garnett v. Transamerica Ins. Services*, 118 Idaho 769, 800 P.2d 656 (Idaho 1990) as an example of the Idaho Supreme Court awarding damages for loss of personal property, lost rents, and extra expenses for causes of action including breach of fiduciary duty. *Pl.'s Br.* at 15. *Garnett* did involve a breach of fiduciary duty claim, but the damages were actually awarded on the breach of contract and breach of good faith and fair dealing claims. However, the Court sees no reason the Idaho Supreme Court would not allow those types of damages on a breach of fiduciary duty claim as well given the similarity to the breach of good faith and fair dealing claim. Accordingly, following the same general analysis of the appropriate measure of damages under the conversion claim, the Court finds that JustMed is entitled to damages of $41,250 on the breach of fiduciary duty count.

### 4. Punitive Damages

As shown above, punitive damages are recoverable under both the conversion and breach of fiduciary duty counts. Furthermore, Byce does not dispute the award of punitive damages. *Def.'s Br.* at 11. Accordingly, the Court finds that the punitive damages award of $5,000 shall stand.

### 5. Permanent Injunction

JustMed believes the Court should again impose a permanent injunction enjoining Byce from using JustMed's software in the future given that he has a demonstrated propensity to take "aggressive actions" in violation of JustMed's rights. *Pl.'s Br.* at 19. Byce does not address the issue in his brief.

The Court finds that reimposition or continuation of the previously ordered permanent injunction enjoining Byce from any use of the source code designated as Nice 5d and versions A 1 through B 5, or any derivative of the same, is warranted given that JustMed is the owner of the source code at issue and given the prior conversion of the source code.

### 6. Judgment

JustMed requests that the Court enter a supplemental order to its Memorandum Decision stating that the compensatory and punitive damages found there were also proximately caused by Byce's acts of conversion and breach of fiduciary duty thereby preserving the existing Amended Judgment. *Pl.'s Br.* at 19. The Court is unclear of the reasoning behind his request. Defendant, on the other hand, believes that the existing

MEMORANDUM DECISION AND ORDER - 15

judgment must be formally vacated. *Def.'s Br.* at 11.

Given that JustMed may lose some lien priority if the Court were to vacate the Amended Judgment, and given that the Amended Judgment contains the same damages awards as the Court would impose in a Second Amended Judgment if it were to vacate the Amended Judgment, the Court finds that it will consider this a supplemental order to the prior Memorandum Decision (Dkt. 86) in order to protect JustMed's creditor's rights. In addition, it will not vacate the Amended Judgment.

## ORDER

**IT IS ORDERED**:

1. JustMed, Inc. shall recover money damages in the amount of $41,250.00, punitive damages of $5,000, and costs of $2,283.14 against Michael Byce on its conversion (Count II) and breach of warranty (Count III) causes of action for a total of $48,533.14.

2. The Amended Judgment and Permanent Injunction (Dkt. 118) shall remain in full force and effect against Michael Byce.



DATED: November 7, 2012

Honorable Mikel H. Williams
United States Magistrate Judge